UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SNUBA INTERNATIONAL, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KIRK GREEN, AN INDIVIDUAL, and WHEELS-2-GO LLC, a Florida Limited Liability Company,<br><br>Defendants. | No. 2:16-cv-1834 KJM DB<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the undersigned on January 6, 2017, pursuant to Local Rule 302(c)(19), for hearing of plaintiff's motion for default judgment. (ECF No. 19.) Attorney Sophy Tabandeh appeared telephonically on behalf of the plaintiff. No appearance was made by, or on behalf of, either defendant. At that time oral argument was heard and the motion was taken under submission.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that the motion for default judgment be granted as explained below.

////

////

1

BACKGROUND

Plaintiff commenced this action on August 3, 2016, by filing a complaint and paying the required filing fee. (ECF No. 1.) Plaintiff's complaint alleges that plaintiff "owns the U.S. Trademark Registration Number 1,489,119 . . . for the word 'SNUBA'" and has developed the SNUBA trademark "through 28 years of safe use and branded identity." (Compl. (ECF No. 1) at 2.)

> The SNUBA system features a floating-compressed air tank with flexible tubing connected to breathing regulators, along with other safety and comfort features. The SNUBA system allows participants to enjoy underwater viewing without the certification or equipment necessary to operate self-contained underwater breathing gear, and at much greater depths than possible through snorkeling.

(Id. at 3.)

Defendant Wheels-2-Go operates the divehookah.com website and offers a competing product to SNUBA. (Id.) Defendant Kirk Green is the principal or employee of Dive Hookah. (Id.) Defendants tried to profit from the SNUBA trademark by using or trafficking in the domain name snubas.com. (Id. at 5.) In this regard, the complaint alleges that the defendants violated 15 U.S.C. § 1125(d) of the Anticybersquatting Consumer Protection Act ("ACPA"). (Id. at 5-6.)

On September 14, 2016, plaintiff filed proof of service on defendant Wheels-2-Go. (ECF No. 5.) Despite being served with process, defendant Wheels-2-Go failed to appear in this action and, pursuant to plaintiff's request, (ECF No. 6), the Clerk of the Court entered defendant Wheels-2-Go's default on September 21, 2016. (ECF No. 7.)

On October 5, 2016, plaintiff filed proof of service on defendant Kirk Green. (ECF No. 8.) Despite being served with process, defendant Kirk Green failed to appear in this action and, pursuant to plaintiff's request, (ECF No. 9), the Clerk of the Court entered defendant Kirk Green's default on October 21, 2016. (ECF No. 10.)

On November 4, 2016, plaintiff filed the motion for default judgment now pending before the court. (ECF No. 14.) On December 6, 2016, the undersigned ordered plaintiff to file supplemental briefing. (ECF No. 16.) Plaintiff filed a response on December 16, 2016. (ECF No. 17.) On January 5, 2017, plaintiff filed a supplemental declaration in support of the

application of entry of default against defendant Kirk Green.  (ECF No. 18.)  Despite being served with all papers filed in connection with the requests for entry of default and motion for default judgment, there was no opposition filed by either defendant.  (ECF Nos. 6-5, 9-7, & 14-2.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.  Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion.  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

////

////

ANALYSIS

**I.  Whether Default Judgment Should Be Entered**

Plaintiff's complaint asserts a single cause of action for violation of 15 U.S.C. § 1125(d). (Compl. (ECF No. 1) at 5-6.) "In 1999, Congress passed the [ACPA], 15 U.S.C. § 1125(d), as an amendment to the Lanham Act to prohibit cybersquatting." Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 680 (9th Cir. 2005). "Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 946 (9th Cir. 2002); see also DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004).

The ACPA "establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" DSPT Intern., Inc. v. Nahum, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A); see also Verizon California Inc. v. Navigation Catalyst Systems, Inc., 568 F.Supp.2d 1088, 1094 (C.D. Cal. 2008) (quoting 15 U.S.C. § 1125(d)(1)(A)).

Here, the factual allegations of plaintiff's complaint, taken as true pursuant to the entry of default against the defendants, establish the following. Plaintiff is a Nevada corporation with its principal place of business in Shingle Springs, California. (Compl. (ECF No. 1) at 2.) Plaintiff owns U.S. Trademark Registration Number 1,489,119 (May 24, 1988) for the word "SNUBA." (Id.)

Plaintiff developed the SNUBA trademark through 28 years of safe use and branded identity. (Id.) The "SNUBA system" consists, in part, of a floating-compressed air tank with flexible tubing connected to breathing regulators that allows people to engage in underwater viewing deeper than possible when snorkeling without certification or additional equipment. (Id. at 3.) Plaintiff operates the website snuba.com. (Id.)

////

Defendant Wheels-2-Go sells a competing product to SNUBA's and operates the website divehookah.com. (Id.) Defendant Kirk Green is a principal or employee of Dive Hookah. (Id.) Defendant Wheels-2-Go is a Florida Limited Liability Company with its principal place of business in Marathon, Florida, and defendant Green is a resident of Florida.[1] (Id.) On July 17, 2016, Green sent SNUBA an email from sales@divehookah.com. (Id.) The email stated that the domain name snubas.com was for sale and that Green had "several interested parties" if plaintiff did not purchase it. (Id.) Plaintiff replied that same day, informing Green that SNUBA was a registered trademark that could not be used without plaintiff's permission. (Id. at 4.)

On July 19, 2016, Green replied:

> I was trying to be fair…and offer it to you first.
>
> This is a domain name legally owned by us. Is NOT a copyright infringement of any kind.
>
> We can use it however we want! Your implied, ill-informed threats are very disrespectful and just bad business.
>
> I now intend to sell this this domain to someone who wants to post a blog about SNUBA's bad business practices and he claims you screw your dealers and customers. He wants the name to post "proof".
>
> I offered it to you first because I don't feel any business should be bashed online. It can be very damaging.
>
> A smart business would buy it just to keep it out the hands of people like I am referring to.
>
> LAST CHANCE. IT WILL BE SOLD WITHIN 24HRS.

(Id.)

On July 24, 2016, plaintiff's counsel sent Green a letter advising Green that the ACPA prevented Green from selling the snubas.com domain name. (Id.) Green responded "Does NOT

---

[1] A court may "subject a party domiciled in one state to jurisdiction in another" where the party "engaged in a scheme to register [plaintiff's] trademarks as his domain names for the purpose of extorting money from [the plaintiff]." Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998); see also Bittorrent, Inc. v. Bittorrent Marketing GMBH, Case No. 12-cv-2525-BLF, 2014 WL 5773197, at *6 (N.D. Cal. Nov. 5, 2014) ("courts have routinely found the existence of specific personal jurisdiction where the defendant's alleged conduct amounts to a scheme targeted at a trademark owner designed to extort money from the mark owner for domain names that capitalize on typographical errors and user confusion").

apply to domain names!" (Id.)  On July 25, 2016, plaintiff informed Green that the ACPA did in fact apply to domain names.  (Id.)  On July 26, 2016, Green stated that he intended to use the site to post complaints about SNUBA and urged SNUBA to "sue me."  (Id.)

As of July 29, 2016, the snubas.com website stated "Proof SNUBA is a SCAM coming soon."  (Id. at 5.)  As of August 3, 2016, the domain name snubas.com was registered to defendant Green.  (Id. at 4.)  Plaintiff's complaint also alleges that Green operated at the direction of, and for the benefit of, defendant Wheels-2-Go.  (Id. at 5.)

Plaintiff's complaint and summons were served upon the defendants.  (ECF Nos. 5, 8 & 18.)  In this regard, the undersigned finds that the defendants were properly served with the complaint and that the Clerk properly entered the default of the defendants.  (ECF Nos. 7 & 10.)  Defendants were also served with plaintiff's application for default judgment.  (ECF No. 14-2.)  Despite being served with process and all papers filed in connection with plaintiff's motion for default judgment, defendants failed to respond to plaintiff's complaint and to plaintiff's motion for default judgment.[2]

After weighing the Eitel factors, the undersigned finds that the material allegations of the complaint are sufficient and establish the merits of plaintiff's substantive claim.  Moreover, plaintiff will be prejudiced if default judgment is denied because plaintiff has no other means for disabling the infringing domain.  Although plaintiff's motion for default judgment seeks $100,000, "such an award would be consistent with other default judgment awards in the context of trademark infringement" and, therefore, "this factor weighs in favor of default judgment."[3] Wecosign, Inc. v. IFG Holdings, Inc., 845 F.Supp.2d 1072, 1082 (C.D. Cal. 2012).

Moreover, in light of the entry of default against the defendants, there is no apparent possibility of a dispute concerning the material facts underlying the action.  Nor is there any indication that defendants' default resulted from excusable neglect, since defendants were

---

[2] On October 31, 2016, defendant Green filed a letter, pro se, requesting a continuation of a scheduling conference.  (ECF No. 11.)  The court's docket reflects no other filings by either defendant.

[3] Although plaintiff seeks $100,000 in damages, the undersigned will recommend an award of damages that is substantially less than $100,000.

6

properly served with plaintiff's pleading as well as with plaintiff's request for entry of default and motion for default judgment. Thus, defendants had ample notice of plaintiff's intent to pursue a default judgment against them.

Although public policy generally favors the resolution of a case on its merits, defendants' failure to appear and defend against plaintiff's claims has made a decision on the merits impossible in this case. Because most of the Eitel factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be entered against the defaulted defendants.

## II. Terms Of Judgment To Be Entered

### A) Damages

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. See Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) ("If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded."). Plaintiff's complaint sought actual, statutory, and treble damages, as well as attorneys' fees, and injunctive relief. (Compl. (ECF No. 1) at 6-7.) With respect to damages, however, plaintiff's motion for default judgment seeks only an award of "$100,000" in statutory damages. (MDJ (ECF No. 14-1) at 6-7.)

"A party that prevails on a claim of cybersquatting may elect to recover 'instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.'" Digby Adler Group LLC v. Image Rent a Car, Inc., 79 F.Supp.3d 1095, 1108 (N.D. Cal. 2015) (quoting 15 U.S.C. § 1117(d)). "'[W]hen a plaintiff seeks statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'" CrossFit, Inc. v. Jenkins, 69 F.Supp.3d 1088, 1101 (D. Colo. 2014) (quoting City of Carlsbad v. Shah, 850 F.Supp.2d 1087, 1108 (S.D. Cal. 2012)).

> To determine a reasonable amount of statutory damages, "courts generally consider a number of factors ..., including the egregiousness or willfulness of the defendant's cybersquatting, the

> defendant's use of false contact information to conceal its infringing activities, the defendant's status as a 'serial' cybersquatter ... and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings."

Wecosign, 845 F.Supp.2d at 1086 (quoting Verizon California, Inc. v. Onlinenic, Inc., No. C 08–2832 JF (RS), 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009)).

Here, it appears that the defendants' conduct was willful. However, there is nothing before the court to support a finding that either defendant used false contact information to conceal infringing activities or is a 'serial' cybersquatter. Moreover, the undersigned does not consider defendants' mere failure to appear in this action to be evidencing an attitude of contempt towards the court.

Accordingly, the undersigned recommends that plaintiff be awarded $25,000 in statutory damages. See, e.g., Shutterstock, Inc. v. Pikulski, No. 14cv0869 WQH (NLS), 2014 WL 6612054, at *6 (S.D. Cal. Nov. 19, 2014) (awarding total of $23,500.00 for multiple domains after finding bad faith); Partners for Health & Home, L.P. v. Yang, 488 B.R. 109 (C.D. Cal. 2012) (awarding $25,000 for domain through which defendant had sold products willfully infringing on plaintiff's trademarks); Verizon California, 2009 WL 2706393, at *5 (awarding $50,000 per violation where all four factors were present); Citigroup, Inc. v. Shui, 611 F.Supp.2d 507, 513 (E.D. Va. 2009) (awarding $100,000 where defendant's use of the domain was "sufficiently willful, deliberate, and performed in bad faith").

### B) Domain Transfer

Plaintiff's motion for default judgment also seeks possession of the snubas.com domain name. (MDJ (ECF No. 14-1) at 7.) The Lanham Act authorizes the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C); see also City of Carlsbad, 850 F.Supp.2d at 1115 ("Transfer of the domain names to the owner of the mark is expressly authorized under the ACPA.").

Accordingly, the undersigned recommends that defendants be ordered to transfer the snubas.com domain name to the plaintiff.

////

CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's November 4, 2016 motion for default judgment (ECF No. 14) be granted;

2. Judgment be entered against the defendants;

3. Defendants be ordered to pay $25,000 in statutory damages;

4. Defendants be ordered to transfer the snubas.com domain name to plaintiff; and

5. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 7, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/snuba1834.mdj.f&rs